*Diaz v. HUD*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of March, two thousand twenty-four.

PRESENT:
>   DENNIS JACOBS,
>   BETH ROBINSON,
>   ALISON J. NATHAN,
>>       *Circuit Judges*.

―――――――――――――――――――――――――――

LYDIA GONZALEZ DIAZ, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, VANESSA WALSH, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, NINA CRAWFORD, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, SAMANTHA COLEMAN, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, MILTON CRUZ, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, MARYANNE HAYES, on behalf of a class of

similarly situated tenants of the New York City Housing Authority at Harlem River Houses, WILLIAM HEARN, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, FRANCISCO HERNANDEZ, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, GAIL JONES, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, MARC POLITE, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, RALPH WAITERS, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, LATRINA WILLIAMS, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, LINDA BOLTON, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, SHARON HOSKINS, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, JOVAN JOHNSON, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, REINA VESQUEZ, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, SONYA TAVARAS, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses, STEVEN TAVAREZ, on behalf of a class of similarly situated tenants of the New York City Housing Authority at Harlem River Houses,

*Plaintiffs-Appellants*,

v.

No. 23-397

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, NEW YORK CITY HOUSING AUTHORITY,

HARLEM RIVER PRESERVATION[*] LLC, C+C APARTMENT
MANAGEMENT LLC,

     *Defendants-Appellees*.

_____

| | |
|---|---|
| FOR APPELLANTS: | ARTHUR Z. SCHWARTZ, Advocates for Justice, Chartered Attorneys, New York, NY |
| FOR APPELLEE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT: | MARK OSMOND, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY |
| FOR APPELLEE NEW YORK CITY HOUSING AUTHORITY: [†] | Andrew M. Lupin, *for* David Rohde, Executive Vice President for Legal Affairs and General Counsel, New York City Housing Authority, New York, NY |

Appeal from a judgment of the United States District Court for the

Southern District of New York (Preska, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment entered on February 21, 2023

is **AFFIRMED**.

_____

[*] The Clerk's office is directed to amend the caption as reflected above.

[†] Counsel for Defendant-Appellees Harlem River Preservation LLC and C+C Apartment Management, LLC entered an appearance but did not file a responsive brief on appeal.

Plaintiffs-Appellants are residents of the Harlem River Houses, a public housing development originally owned by Defendant-Appellee New York City Housing Authority ("NYCHA") and funded under Section 9 of the Housing Act of 1937. In 2022, following approval by Defendant-Appellee United States Department of Housing and Urban Development ("HUD"), the Harlem River Houses were converted from a publicly owned Section 9 housing development to a privately owned development funded pursuant to Section 8 of the Housing and Community Development Act of 1974.

After HUD approved the conversion and multiple entities conducted multiple transactions implementing it, Plaintiffs challenged the conversion in a March 2022 lawsuit. The district court dismissed for lack of standing. *Diaz v. United States Department of Housing and Urban Development*, 657 F. Supp. 3d 372 (S.D.N.Y. 2023). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

A motion to dismiss for lack of Article III standing is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because it challenges the federal court's exercise of subject matter jurisdiction. *See Carter v. HealthPort Technologies, LLC,*

4

822 F.3d 47, 56 (2d Cir. 2016). Where, as here, the defendant's 12(b)(1) motion to dismiss is based on evidence outside the pleadings, we review the district court's legal conclusions without deference and its findings of fact for clear error. *Id.* at 57; *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

A federal court lacks subject matter jurisdiction—and therefore cannot consider a lawsuit's merits—unless three constitutional standing requirements are met. First, the plaintiff must have suffered an "injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Second, that injury must be "fairly traceable" to the defendant's challenged conduct. *Id.* And third, it must be "likely" that the injury will be "redressed by a favorable judicial decision." *Id.* As "[t]he party invoking federal jurisdiction," Plaintiffs bear the burden of establishing Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The district court granted Defendants' motion to dismiss because it concluded that Plaintiffs' alleged injuries cannot be redressed by a favorable judicial decision. *Diaz*, 657 F. Supp. 3d at 381. We agree.

"Though federal courts possess great authority, they lack the power, once a bell has been rung, to unring it." *Presidential Gardens Associates v. U.S. ex rel.*

*Secretary of Housing and Urban Development*, 175 F.3d 132, 143 (2d Cir. 1999).[1] We have explained that the federal courts cannot feasibly undo certain complex commercial and real estate transactions since "restoration of the *status quo* may be impossible." *Bank of New York Co. v. Northeast Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993). In such cases, "the legality of the challenged merger or acquisition may become essentially a moot question." *Id.* at 1067; *see also Presidential Gardens*, 175 F.3d at 143–44.

The Court in both *Presidential Gardens* and *Bank of New York* assessed whether the plaintiffs' claims were moot because the relevant financial transactions could not feasibly be undone. "Mootness is 'standing set in a time frame.'" *Stafford v. International Business Machines Corporation*, 78 F.4th 62, 67 (2d Cir. 2023) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). And although mootness and standing are distinct doctrines, *see Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189–93 (2000), that distinction makes no difference here. Plaintiffs' suit is not redressable for the same reasons the suits in *Presidential Gardens* and *Bank of New*

---

[1] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

*York* were moot—complex commercial transactions have made it infeasible to redress plaintiffs' alleged injuries.

Here, we see no error in the district court's conclusion that the Harlem River Houses' conversion from a Section 9 to Section 8 housing project cannot feasibly be undone. As the court pointed out, the Harlem River Houses has already been converted. The conversion raised more than $274 million of debt and equity financing, including approximately $63 million in periodic historic tax credit equity investments from Chase Community Equity, LLC and $34.75 million in mortgage loans financed by individual debtholders, as part of more than $209 million of debt. That financing has been allocated across both for-profit and non-profit entities, many of which are not named parties to this lawsuit. Multiple parties also have effectuated a 99-year ground lease of the Harlem River Houses property; and the Harlem River Houses' original declaration of trust, which is required for a housing project to be funded under Section 9, has been released. Further, NYCHA's Harlem River Houses workforce has been replaced; and renovations are well underway, with estimated rehabilitation costs exceeding $145 million.

Based on this record, the district court did not clearly err in finding that "[t]here has been a 'commingling of assets and other substantial changes in the structures of the enterprise involved'" that make it infeasible to revert the Harlem River Houses back to Section 9 status.  *Diaz*, 657 F. Supp. 3d at 381 (quoting *Bank of New York*, 9 F.3d at 1067).

We also reject Plaintiffs' argument that injunctive relief can be granted because "the key parties are all before the Court, and all the matter[s] undertaken (mortgages and repairs) involve money."  Appellant's Br. at 45–46.  As the above facts demonstrate, effective injunctive relief would require far more than an injunction from this Court rescinding HUD's approval of the conversion and a check from NYCHA returning investment dollars.  Effective relief would—at a minimum—unwind hundreds of millions of dollars of commingled assets, debts, and investments; halt ongoing renovations; re-trigger Section 9's statutory and regulatory requirements; and compel NYCHA to hire a new workforce to manage the Harlem River Houses.  Additionally, it's not clear that all key parties are actually before this Court.  For example, the individual debtholders, whose investments would be affected by injunctive relief, are not named parties.

Accordingly, the district court correctly dismissed Plaintiffs' claim for injunctive relief for lack of standing.

The court also appropriately dismissed Plaintiffs' claim for declaratory relief. "[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 593 U.S. 659, 672 (2021). Plaintiffs haven't satisfied this requirement because they haven't explained how *they* would benefit from declaratory relief. As Plaintiffs' counsel conceded during oral argument, a judgment declaring NYCHA ineligible to participate in such housing conversions would only potentially advance the claims of *other* tenants at *other* projects.

Contrary to Plaintiffs' argument, declaratory relief cannot be granted under the doctrine of "prudential mootness." As Plaintiffs admit, that doctrine "is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power." Appellant's Reply Br. 19 (quoting *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991)). Since Plaintiffs lack Article III standing to sue, however, there's no power to exercise. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that Article III

9

standing is "the threshold question in every federal case, determining the power of the court to entertain the suit").

Finally, the parties dispute whether Plaintiffs could have sought preliminary relief and whether they have alleged a cognizable injury. Because we hold that Plaintiffs' alleged injuries are not redressable, we express no opinion as to whether they could have sought preliminary relief under Section 705 of the Administrative Procedure Act or the All Writs Act. Nor do we decide whether Plaintiffs have alleged a cognizable injury in fact.

\* \* \*

We have considered Plaintiffs' remaining arguments and conclude that they are without merit. Accordingly, the district court's judgment of dismissal is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10